UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARSHELL RUSSELL,

               Plaintiff,               CIVIL ACTION NO. 10-12118

     v.                         DISTRICT JUDGE AVERN COHN

COMMISSIONER OF               MAGISTRATE JUDGE MARK A. RANDON
SOCIAL SECURITY,

               Defendant.

_____/

**REPORT AND RECOMMENDATION**
**ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

## I.   PROCEDURAL HISTORY

### A.   *Proceedings in this Court*

On May 26, 2010, Plaintiff Darshell Russell ("Plaintiff") filed the instant suit seeking

judicial review of the Commissioner's decision disallowing benefits (Dkt. No. 1).  Pursuant to 28

U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), this matter was referred to the undersigned for

the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of

Supplemental Security Income ("SSI") benefits (Dkt. No. 3).  This matter is currently before the

Court on cross-motions for summary judgment (Dkt. Nos. 14, 19).

### B.   *Administrative Proceedings*

Plaintiff filed the instant claims on August 14, 2006, alleging that she became unable to

work on May 9, 2001[1] (Tr. 13, 81).  The claim was initially disapproved by the Commissioner on

---

[1]  Although Plaintiff alleged disability beginning on May 9, 2001, she could not have been found disabled until on or after August 14, 2006 – her application date for SSI benefits.  *See Casey v. Sec'y of Health and Human Serv's,* 987 F.2d 1230, 1233 (6th Cir. 1993) ("The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date").  Accordingly, the Report and Recommendation will only analyze the medical evidence immediately preceding, and after, Plaintiff's application date of August 14, 2006.

December 14, 2006  (Tr. 13, 45-48).  Plaintiff requested a hearing and, on March 2, 2009,

Plaintiff appeared with counsel before Administrative Law Judge ("ALJ") Robert M. Senander,

who considered the case *de novo*.  In a decision dated June 1, 2009, the ALJ found that Plaintiff

was not disabled (Tr. 10-20).  Plaintiff requested a review of this decision on June 12, 2009 (Tr.

8-9).  The ALJ's decision became the final decision of the Commissioner on November 9, 2009

when, after the review of additional exhibits[2] (Ex. 14E, Tr. 203-206), the Appeals Council denied

Plaintiff's request for further review (Tr. 4-7).

In light of the entire record in this case, this Magistrate Judge finds that substantial

evidence supports the Commissioner's determination that Plaintiff is not disabled.  Accordingly,

it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**,

Defendant's motion for summary judgment be **GRANTED**, and that the findings of the

Commissioner be **AFFIRMED**.

## II.    STATEMENT OF FACTS

### A.    ALJ Findings

Plaintiff was 32 years old at the time of the most recent administrative hearing (Tr. 15).

Plaintiff has no past relevant work history (Tr. 18).  The ALJ applied the five-step disability

analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial

gainful activity since August 14, 2006, the date she applied for SSI benefits (Tr. 15).  At step

two, the ALJ found that Plaintiff had the following "severe" impairments: "depression,

---

[2]   In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ.  In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

generalized anxiety, social phobia, post-traumatic stress disorder (PTSD), avoidant personality disorder, paranoid personality disorder, uterine bleeding, anemia, and obesity" (Tr. 15).  At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations (Tr. 15-16).  Specifically, the ALJ considered whether Plaintiff met or medically equaled the following listings – 1.02 (major dysfunction of a joint), 12.04 (affective disorders), 12.06 (anxiety-related disorders) and 12.08 (personality disorders) (Tr. 15-16), and found that Plaintiff did not meet or medically equal any of these listed impairments.

Between steps three and four, the ALJ found that Plaintiff had the Residual Functional Capacity (RFC) to perform "light work...except sit/stand option every 1 hour, no standing for more than 1 hour at a time, no contact with general public, and simple 1, 2, 3 step jobs" (Tr. 17).  At step four, the ALJ found that Plaintiff could not do her previous work, since Plaintiff had no prior relevant work.  At step five, the ALJ denied Plaintiff benefits, because the ALJ found that Plaintiff could perform a significant number of jobs available in the national economy, such as mail clerk (1,900 jobs) office helper (2,500 jobs) or home keeper (2,500 jobs) (Tr. 19).

### B.    Administrative Record

#### 1.    Medical Evidence

The record contains, and Plaintiff's motion for summary judgement relies on, medical evidence going as far back as February 2000.  However, as noted in footnote 1, *supra*, Plaintiff cannot be found disabled prior to her application date for SSI benefits, which was August 14, 2006.  Therefore, this Report and Recommendation will focus on the medical evidence immediately preceding, and after, August 14, 2006.

In May 2006, Plaintiff presented for two intake interviews at the psychology clinic at Wayne State University (Tr. 294-95).  Plaintiff was interviewed by Rebecca Thompson, B.A.,

and Jeffrey Kuentzel, Ph.D. (Tr. 294-95). Plaintiff presented as depressed and anxious (Tr. 294-95). Plaintiff returned to Ms. Thompson and Dr. Kuentzel on five occasions in May and June 2006 (Tr. 289-93). She reported having anxiety about entering the workforce and discussed her reaction to a death in her family, which caused her to want to stay in her room (Tr. 290-92).

Plaintiff returned to the psychology clinic at Wayne State University on six occasions in July and August 2006, and met with Ms. Thompson during every appointment (Tr. 283-88). Plaintiff tried deep breathing to reduce her anxiety and anger and tracked her moods in a journal (Tr. 288).

During an August 2006 appointment, Plaintiff stated that she was taking her children with her on errands and preparing them for school, which she enjoyed, but that she had frustration and disappointment regarding her relationship with her husband (Tr. 284). At the end of August 2006, Plaintiff discussed her fears about walking around her college campus (Tr. 283).

In July 2006, Ms. Thompson wrote a summary of Plaintiff's intake interviews that occurred in May and June 2006; Dr. Kuentzel signed the summary the next month (Tr. 273-76). During those interviews, Plaintiff presented with symptoms of depression and reported that she had great sadness, guilt, loss of interest in activities, sleep disturbance, and weight gain of 100 pounds (Tr. 273). Plaintiff stated that she spent "98%" of her life in her room, and that because she was embarrassed and self-conscious about her weight, she avoided being in public (Tr. 273). Plaintiff reported two suicide attempts in 1994 and 2001, but said that she had not had any suicidal thoughts since 2001 (Tr. 273). She stated that she had a number of personal traumas in the past, including witnessing domestic violence, being sexually assaulted twice, held up at gunpoint and robbed at knife point (Tr. 273-74).

Plaintiff reported that she had three children and was married, but that the relationship was "not too good" (Tr. 274).  Plaintiff reported that, until recently, her husband had attended all of her college classes, or stood where she could see him, and that she had to drop some classes because her husband was not permitted in the classroom (Tr. 274).  Plaintiff reported experiencing symptoms related to depression, isolation, hostility, paranoid ideation, anxiety, phobias, obsessions, and compulsions (Tr. 275).  Ms. Thompson diagnosed recurrent major depressive disorder, generalized anxiety disorder, social phobia, and post-traumatic stress disorder (PTSD) (Tr. 275).  Plaintiff was assessed a Global Assessment of Functioning ("GAF") score of 45 (Tr. 276).[3]

Plaintiff presented to Ms. Thompson on four occasions in September 2006 (Tr. 279-82). During the first visit, Plaintiff stated that a professor had recently pointed out that she was sitting in the back of the class and she was also asked to do group work, which caused her to skip two classes due to anxiety (Tr. 282).  At the next appointment, Plaintiff reported that school was going well and that she was asserting herself and managing her anger (Tr. 281).

In October 2006, Kathy Morrow, Ph.D., reviewed Plaintiff's records for the state DDS and created a report (Tr. 403-19). Dr. Morrow diagnosed major depressive disorder, generalized anxiety disorder (GAD), social phobia, PTSD, avoidant personality disorder, and paranoid

---

[3]   The GAF score is "a subjective determination that represents the clinician's judgment of the individual's overall level of functioning. It ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). A GAF score of 31-40 indicates some impairment in reality testing or communication (*e.g.*, speech is at times illogical, obscure, or irrelevant) or major impairment in several areas such as work or school, family relations, judgment, thinking or mood. A GAF of 41 to 50 means that the patient has serious symptoms . . . OR any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job). A GAF rating of 51 to 60 signals the existence of moderate difficulty in social or occupational functioning." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 276 (6th Cir. 2009).  "A GAF score may help an ALJ assess mental RFC, but it is not raw medical data. Rather, it allows a mental health professional to turn medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's mental functioning." *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x. 496, 502 fn. 7 (6th Cir. 2006).

personality disorder (Tr. 406, 408, 410). Dr. Morrow opined that Plaintiff had "moderate" restrictions in activities of daily living and "mild" limitations in social functioning and in concentration, persistence, or pace (Tr. 413). Dr. Morrow concluded that Plaintiff could tolerate low stress social demands, adapt to simple changes in routine, and opined that Plaintiff could sustain an independent routine of simple work activity, but may be limited in more complex and detailed work demands (Tr. 419).

In October 2006, Dr. Kokila Sheth also examined Plaintiff's medical records for the state DDS and created an assessment of Plaintiff's mental conditions (Tr. 389-402). Dr. Sheth's diagnoses were similar to Dr. Morrow's (Tr. 392, 396 394, 406, 408, 410). Dr. Sheth opined that Plaintiff had "mild" restrictions in activities of daily living and "moderate" limitations in social functioning and in concentration, persistence, or pace (Tr. 399). Dr. Sheth opined that "[b]ase (sic) on data sever (sic) impairment does not meet or equil (sic) of (sic) listing. No hospitalization or episodic detoriation (sic). She retains mental RFC to do simple low sressfull (sic) work on sustin (sic) basis with adequite (sic) pace and endorence (sic)" (Tr. 401).

In November 2006, Dr. Cynthia Shelby-Lane examined Plaintiff for the state DDS (Tr. 378-81). Plaintiff complained of mood swings, crying spells, sadness, suicidal thoughts, two past suicide attempts, hopelessness, frustration, loss of motivation, and lack of interest (Tr. 378). Dr. Shelby-Lane stated that Plaintiff had a history of dysfunctional uterine bleeding since taking Wellbutrin (anti-depressant) in 2003 and 2004 and also had anemia (Tr. 378). Plaintiff also reported chronic knee pain with difficulty standing, stooping, and squatting (Tr. 380). Dr. Shelby-Lane noted that Plaintiff was obese; did not use a cane; could get on to and off of the exam table with no difficulty; had no problems tandem walking and heel and toe walking; and

could squat and bend to 50% and recover (Tr. 381).  Dr. Shelby-Lane diagnosed depression, hypertension, obesity, and DUB (Tr. 381).

In April 2009, Jacquelyn Avery, M.A., and Paul Toro, Ph.D., signed a letter regarding Plaintiff's mental conditions (Tr. 442).  The letter stated that Plaintiff had been in continuous psychotherapy since May 2006, that one of the writers had been her therapist since September 2008, and that Plaintiff had been an active and reliable patient and that she made steady progress with attenuation of her symptoms, particularly depression (Tr. 442).  The letter stated that Plaintiff still struggled with symptoms of generalized anxiety disorder, PTSD, and social phobia (Tr. 442).  The letter indicated that Plaintiff had difficulty leaving her home without her husband and had anxiety about past traumatic events, exacerbated by certain stimuli and situations (Tr. 442).  The letter stated that Plaintiff avoided social situations to prevent negative behavior, and that her anxieties continued to interfere with her academic, occupational, and interpersonal functioning, making it extremely challenging for her to acquire steady work; these examiners assessed a GAF score of 50 (Tr. 442).

## 2.    Medical Evidence Submitted To The Court

Plaintiff attached a number of medical records to her motion for summary judgment that were not submitted to the ALJ or the Appeals Council.  This material will be summarized in this Report and Recommendation because Plaintiff argues that a remand is warranted pursuant to sentence six of 42 U.S.C. § 405(g), for consideration of this additional evidence (Dkt. 14; Pl.'s Br. at 24-25).

In January 2009, Dr. Anna Ledgerwood examined Plaintiff's CT scan and opined that she had a density attached to the fascia of her abdominal wall relating to a previous surgery; Dr. Ledgerwood recommended a CT scan in six months (Pl.'s Br., Ex. 3).

In December 2009, Plaintiff presented to Dr. Malcolm with complaints of abdominal pain unrelieved with medications; Dr. Malcolm found an abdominal mass and continued her medications (Pl.'s Br., Ex. 2, p. 12-13).  In January 2010, Plaintiff reported to Dr. Malcolm that she had worsened abdominal pain and requested fascia injections; Plaintiff had abdominal tenderness and was prescribed medications (Pl.'s Br., Ex. 2, p. 5).  Plaintiff stated to Dr. Malcolm in March 2010 that she had been to a pain clinic and was scheduled for nerve blocks in her abdomen, which she later stated helped (Pl.'s Br., Ex. 2, p. 1, 3).

In February 2010, Plaintiff stated to Dr. Mohamed Othman that she had a nine-year history of abdominal pain (Pl.'s Br., Ex. 5, p. 1).  Dr. Othman prescribed a topical ointment and scheduled a hypogastric plexus block (Pl.'s Br., Ex. 5, p. 3).

In November 2010, Nick Boneff, Ph.D. examined Plaintiff for the state DDS based on a new claim by Plaintiff for disability (Pl.'s Br., Ex. 4).  Plaintiff reported that she was no longer in school, saw and heard "dead people," and was "kind of like a recluse" (Pl.'s Br., Ex. 4, p. 2-3).  Dr. Boneff diagnosed PTSD, panic disorder with agoraphobia, depression, alcohol abuse, and dependant personality disorder (Pl.'s Br., Ex. 4, p. 4).

### C.    *Plaintiff's Claims of Error*

Plaintiff raises three main arguments on appeal, namely: (1) that the ALJ erred in finding that Plaintiff did not meet or medically equal a listed impairment, specifically listings 12.04 (affective disorders) & 12.06 (anxiety-related disorders); (2) that the ALJ erred in assessing Plaintiff's RFC, specifically that the ALJ improperly rejected/misstated the opinion of Plaintiff's treating physician (Dr. Toro); and (3) that this matter should be remanded pursuant to sentence six of 42 U.S.C. § 405(g) to consider new and material evidence that was not submitted by Plaintiff to the ALJ.

-8-

## III.    DISCUSSION

### A.    *Standard of Review*

In enacting the Social Security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *See Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *See Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may...consider the credibility of a claimant when making a

determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007)
(the "ALJ's credibility determinations about the claimant are to be given great weight,
particularly since the ALJ is charged with observing the claimant's demeanor and credibility.")
(quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree
is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony,
and other evidence.").  "However, the ALJ is not free to make credibility determinations based
solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486
F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.
42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely
because it disagrees or because "there exists in the record substantial evidence to support a
different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006);
*Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more
than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a
reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241;
*Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of
choice' within which the Commissioner may proceed without interference from the courts."
*Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800
F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *See*
*Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing
the Commissioner's factual findings for substantial evidence, a reviewing court must consider
the evidence in the record as a whole, including that evidence which might subtract from its

weight.  *See Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

### B.      Governing Law

The "[c]laimant bears the burden of proving her entitlement to benefits."  *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x. 515, 524 (6th Cir. 2003).  There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq*.).  Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch, *Federal Disability Law and Practice* § 1.1 (1984).  While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of
> any medically determinable physical or mental impairment which

> can be expected to result in death or which has lasted or can be
> expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial
> gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or
> combination of impairments, that "significantly limits...physical or
> mental ability to do basic work activities," benefits are denied
> without further analysis.

> Step Three:  If the claimant is not performing substantial gainful
> activity, has a severe impairment that is expected to last for at least
> twelve months, and the severe impairment meets or equals one of
> the impairments listed in the regulations, the claimant is
> conclusively presumed to be disabled regardless of age, education
> or work experience.

> Step Four:  If the claimant is able to perform his or her past
> relevant work, benefits are denied without further analysis.

> Step Five: Even if the claimant is unable to perform his or her past
> relevant work, if other work exists in the national economy that the
> claimant can perform, in view of his or her age, education, and
> work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden

-12-

transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

### C.    Analysis and Conclusions

As noted earlier, Plaintiff raises three arguments on appeal.  Each argument is considered below:

### 1.    The ALJ Did Not Err In Finding That Plaintiff Failed To Meet Or Medically Equal A Listed Impairment

Plaintiff's first argument on appeal is that the ALJ erred by not finding that Plaintiff met or medically equaled listings 12.04 (affective disorders) or 12.06 (anxiety-related disorders).  The burden of proof for establishing that an impairment meets or equals the requirements of a listed impairment rests with the claimant.  *See Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).  To meet a listed impairment, a claimant must satisfy all of the criteria in the listing.  *See Roby v. Comm'r of Soc. Sec.*, 48 Fed. App'x. 532, 536 (6th Cir. 2002), citing, *Hale v. Secretary of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir. 1987).  "If all the requirements of the listing are not present, the claimant does not satisfy that listing."  *Berry v. Commissioner*, 34 Fed. App'x. 202, 203 (6th Cir. 2002).  "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).  "It is insufficient that a claimant comes close to satisfying the requirements of a listed impairment." *Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003).

-13-

In order to meet either listings 12.04 or 12.06, Plaintiff must show that she satisfies the criteria in both Paragraphs A and B of those listings. *See* 20 C.F.R. pt. 404, subpt. P, app. 1 §§ 12.04, 12.06. The A criteria consist of clinical findings which medically substantiate a mental disorder. To satisfy the B requirements of listings 12.04 and 12 .06, Plaintiff has to establish at least two of the following limitations: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. *Id*. Alternatively, under listing 12.04 or 12.06, Plaintiff may satisfy the requirements of a listed mental impairment if she has a medically substantiated mental impairment and functional limitations that meet the "C" criteria of the listing. The "C" criteria for listing 12.04 requires a medically documented history of a mental impairment and one of the following: (1) repeated episodes of decompensation, each of extended duration; (2) a residual disease that has resulted in such marginal adjustment that even minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement with a need for such an arrangement to continue. *See* 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.04. For listing 12.06, the "C" criteria is met if the mental impairment resulted in the "complete inability to function independently outside the area of one's home." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.06.

With respect to listing 12.04, Plaintiff challenges only the ALJ's finding with respect to the "B" criteria, thus only that portion of listing 12.04 will be addressed. According to Plaintiff, she meets the B criteria because she has marked restriction of her activities of daily living. As the ALJ discussed in his decision, Plaintiff did not satisfy the Paragraph B criteria (Tr. 17). In

-14-

his decision, the ALJ adopted Dr. Morrow's assessment of Plaintiff's functioning in these categories (Tr. 16). Specifically, the ALJ agreed with Dr. Morrow's opinion that Plaintiff had "moderate" restrictions in activities of daily living; mild limitations in social functioning and in concentration, persistence, or pace; and no episodes of decompensation, which were of extended duration (Tr. 16, 413).

Although Plaintiff recites a large amount of evidence from the record concerning her mental complaints and treatment, she does not attempt to explain how any of the evidence impacted her ability to maintain social functioning and concentration, persistence, or pace (Pl.'s Br. at 17-19). Indeed, none of the cited evidence appears to have any bearing on whether Plaintiff had more than mild limitations in concentration, persistence, or pace. Plaintiff produced no evidence of marked limitations in concentration, persistence, or pace, and does not argue that she had marked limitations in daily activities or episodes of decompensation, each of extended duration.

Plaintiff also argues that the ALJ did not properly consider the effect of her obesity on her depression as required by Social Security Ruling ("SSR") 02–01p. SSR 02–01p provides guidance for evaluating the impact of obesity on other physical and mental conditions, and explains that obesity often has an effect on other mental and physical conditions. However, SSR 02–01p also explains that there is no precise formula to apply; a claimant must still meet the definition of a severe impairment. SSR 02–01p merely instructs the finder of fact to consider the potential of obesity to impact other conditions. *See Brown v. Comm'r of Social Sec.*, Case No. 10-12960, 2011 WL 6000590 (E.D. Mich., Nov. 28, 2011 (Cohn, J.). Contrary to Plaintiff's argument, the ALJ specifically stated that he considered Plaintiff's impairments in combination, including her mental conditions and obesity (Tr. 17). Plaintiff cites only one instance where she

-15-

reported that her obesity did have an effect on her social functioning, and identifies no opinion from a medical source that it did significantly limit her in that regard.  In sum, Plaintiff fails to show that the ALJ erred in finding that she did not meet or equal the criteria of listing 12.04.

As to listing 12.06, Plaintiff contends only that she satisfied the C criteria of 12.06, thus only that portion of the listing will be addressed.  The requirements of 12.06C are satisfied if a claimant's anxiety related disorder results in a "complete inability to function independently outside the area of [the claimant's] home."  Although Plaintiff cites evidence concerning her allegedly diminished ability to function outside the home – such as her claim that her husband had to accompany her to college classes – the ALJ discussed evidence that supports his finding that she did not satisfy the criteria of 12.06C (Pl.'s Br. at 18, Tr. 274).  For example, in assessing Plaintiff's RFC, the ALJ noted that although Dr. Toro opined in April 2009, that Plaintiff's anxieties made it extremely challenging for her to acquire steady work outside her home, Dr. Toro did not state that Plaintiff was precluded from working and noted that Plaintiff had made steady progress with attenuation of her symptoms, particularly her depression (Tr. 18, 442).  While Dr. Toro did note Plaintiff's continuing difficulties, he did not describe Plaintiff as a person who was essentially confined to her bedroom, as Plaintiff claimed (Tr. 34, 273, 442).  Furthermore, although Plaintiff avers that she suffers from an inability to independently function outside her home, the ALJ noted that she was in college with an upcoming graduation date, helped raise three children, interacted with medical sources without documented fear or anxiety, and raised no concerns during the hearing (Tr. 18).  All of these activities directly rebutted Plaintiff's claim that she could not function outside of her home.

Plaintiff also contends that the ALJ misinterpreted a GAF score assigned by Dr. Toro and made findings inconsistent with evidence from Dr. Boneff (Pl.'s Br. at 19-20).  As to the GAF

score, the Sixth Circuit has held that "[a] GAF score may help an ALJ assess mental RFC, but it is not raw medical data. Rather, it allows a mental health professional to turn medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's mental functioning." *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 503 fn.7 (6th Cir. 2006). In this matter, the ALJ did not misinterpret the GAF score issued by Dr. Toro. Rather, the ALJ appropriately considered that score in conjunction with all the other medical evidence. As to Dr. Boneff, Plaintiff cannot now rely on evidence from Dr. Boneff in arguing that the ALJ erred in finding that her condition did not meet or equal a listing. The Commissioner correctly notes that Dr. Boneff's assessment is entirely irrelevant with respect to whether the ALJ's decision is supported by substantial evidence, since Dr. Boneff examined Plaintiff in *November 2010* – one year after the Appeals Council denied Plaintiff's request to review the ALJ's decision (Pl.'s Br., Ex. 4, Tr. 4, 20). It has been "[r]epeatedly held that evidence submitted to the Appeals Council after the ALJ's decision cannot be considered part of the record for purposes of substantial evidence review." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (citing *Cline*, 96 F. 3d at 148). Logically, the same principle applies to evidence first submitted to this Court.

In sum, Plaintiff fails to explain how the medical evidence shows that she met or medically equaled either listing 12.04 or 12.06 and the undersigned finds no reason to disturb the ALJ's findings.

### 2.     Substantial Evidence Supports That ALJ's Conclusion That Plaintiff Could Perform A Limited Range Of Light Work

Plaintiff next argues that she was more limited than found by the ALJ, such that she could only perform a limited range of "sedentary" work (as opposed to "light" work) (Pl.'s Br. at 21-24). In support of her argument, Plaintiff claims that the ALJ erred in making his RFC

finding because it conflicted with Dr. Toro's opinion, which Plaintiff asserts the ALJ did not properly consider (Pl.'s Br. at 22-24). Plaintiff's primary contention appears to be that the ALJ erroneously considered the GAF score of 50, assessed by Dr. Toro, to indicate an ability to work and that the ALJ should have credited Dr. Kuentzel's assessment of a GAF score of 45 (Pl.'s Br. at 19, 22). As just noted in the preceding section, GAF scores are not necessarily indicators of a person's functioning and ALJs need not place any special stock in GAF scores. *See Kornecky v. Comm'r of Social Security*, 167 F. App'x 496, 511 (6th Cir. 2006). Regardless, the ALJ did consider the GAF score of 50 assigned by Dr. Toro in assessing Plaintiff's credibility and found that it was probative of whether Plaintiff could work (Tr. 18). Plaintiff believes this was an inaccurate finding because a GAF score of 50 indicates serious symptoms or any serious impairment in social, occupational, or school functioning (Pl.'s Br. at 19). *See* DSM-IV-TR at 34. She also noted that Dr. Kuentzel assigned a GAF score 45, which is in the same range (Pl.'s Brief at 22).

The ALJ did not consider the GAF score from Dr. Toro in isolation, but rather considered it together with other elements of Dr. Toro's opinion and other facts in the record in determining that Plaintiff had the RFC to perform light work with significant mental limitations (Tr. 18). The ALJ found that although Dr. Toro opined that Plaintiff's anxieties made it extremely challenging for her to acquire steady work outside her home, Dr. Toro did not state that Plaintiff was precluded from working and noted that she had made steady progress with attenuation of her symptoms, particularly her depression (Tr. 18, 442).

Furthermore, Plaintiff does not dispute the other reasons that the ALJ provided for determining that Plaintiff was not as limited as she claimed. As discussed above, the ALJ correctly noted that Plaintiff was in college with an upcoming graduation date, helped raise three

-18-

children, interacted with medical sources without documented fear or anxiety, and raised no
concerns during the hearing (Tr. 18). In sum, I find that, contrary to Plaintiff's arguments,
substantial evidence supports the ALJ's RFC finding.

### 3. The Additional Evidence Submitted By Plaintiff Does Not Warrant A "Sentence Six" Remand

Finally, Plaintiff argues that the additional medical records attached to her brief – but not
submitted to the ALJ or the Appeals Council – should be considered in determining whether
substantial evidence supports the ALJ's decision (Pl.'s Br. at 19-20, Exs. 1-5). This additional
material cannot be considered as part of the substantial evidence review, since the Sixth Circuit
recognizes that "where the Appeals Council considers new evidence but declines to review a
claimant's application for disability insurance benefits on the merits, the district court cannot
consider that new evidence in deciding whether to uphold, modify, or reverse the ALJ's
decision." *Cline v. Comm'r of Soc. Sec.*, 96 F. 3d 146, 148 (6th Cir. 1996) (citation omitted).
This reasoning applies with equal force – arguably with even greater force – to material that was
not submitted to the Appeal's Council, but rather was first submitted to this Court. Thus, the
only way this evidence can be admitted into the record is through what is known as a "sentence
six" remand.

Under sentence six of 42 U.S.C. § 405(g), Plaintiff has the burden to demonstrate that the
additional evidence attached to her motion for summary judgment is "new" and "material" and
that there is "good cause" for failing to present this evidence in the prior proceeding. *Hollon v.
Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006); *Longworth v. Comm'r of Soc. Sec.*, 402
F.3d 591, 598 (6th Cir. 2005). Courts "are not free to dispense with these statutory
requirements." *Hollon*, 447 F.3d at 486. "Good cause" is *not* established solely because the new

evidence was not generated until after the ALJ's decision; the Sixth Circuit has taken a "harder line" on the good cause test. *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986); *see also Perkins v. Apfel*, 14 Fed. App'x. 593, 598-99 (6th Cir. 2001). A plaintiff attempting to introduce new evidence must explain why the evidence was not obtained earlier and submitted to the ALJ before the ALJ's decision. *See Hollon*, 447 F.3d at 485; *see also Brace v. Comm'r of Soc. Sec.*, 97 Fed. App'x. 589, 592 (6th Cir. 2004) (claimant's decision to wait and schedule tests just before the hearing with the ALJ did not establish good cause); *Cranfield v. Comm'r of Soc. Sec.*, 79 Fed. App'x. 852, 859 (6th Cir. 2003).

In this matter, Plaintiff simply states that she either had not been able to get the medical records or that they had not been given to her (Pl.'s Br. at 24). However, she provides no justification for this, as required by the case law cited above. Plaintiff does not even attempt to establish "good cause" as that test has been explained by the Sixth Circuit and, thus, the undersigned concludes that a remand is not appropriate for this reason.

Furthermore, in order to establish "materiality," Plaintiff must show that the introduction of the new evidence would have reasonably persuaded the Commissioner to reach a different conclusion. *See Foster v. Halter*, 279 F.3d at 357; *Sizemore v. Sec. of HHS.*, 865 F.2d 709, 711 (6th Cir. 1988); *Hensley v. Comm'r of Soc. Sec.*, 214 Fed. App'x. 547, 550 (6th Cir. 2007). With regard to Plaintiff's mental conditions, Plaintiff only claims that the evidence shows "continuing/consistent mental impairments" and notes that she had not been able to attain a college degree (Pl.'s Br. at 24-25). Plaintiff fails to show how this evidence would have caused the ALJ to find her disabled, since this evidence appears to be cumulative of the evidence already submitted. With regard to her abdominal pains, Plaintiff states that the additional records substantiated her complaints of significant pain (Pl.'s Br. at 24). Again, Plaintiff does not show

-20-

that the evidence would have caused the ALJ to find her disabled.  Indeed, the ALJ's RFC assessment and hypothetical question to the VE both assumed that Plaintiff was limited due to abdominal pain.  Simply put, Plaintiff has not established that the additional evidence concerning her abdominal pain would likely alter the ALJ's ultimate conclusion.

In sum, Plaintiff fails to show that this case should be remanded pursuant to sentence six of 42 U.S.C. § 405(g), because Plaintiff has not demonstrated the additional evidence was "new" and "material" and has not established that "good cause" exists for not submitting this evidence to the ALJ.

## III.     RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, that Defendant's motion for summary judgment be **GRANTED** and that the findings and conclusions of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

s/Mark A. Randon
MARK A. RANDON
UNITED STATES MAGISTRATE JUDGE

Dated:  January 26, 2012

*Certificate of Service*

*I hereby certify that a copy of the foregoing document was served on the parties of record on this date, January 26, 2012, electronically and by first class mail.*

*s/Melody R. Miles*
*Case Manager to Magistrate Judge Mark A. Randon*
*(313) 234-5542*