UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARSHELL RUSSELL,

        Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

Case No. 10-12118

HON. AVERN COHN

**MEMORANDUM AND ORDER ADOPTING THE REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE (DOC. 20)
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. 19)
DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DOC. 14)**

## I. Introduction

This is a social security case. Plaintiff Darshell Russell (Russell) appeals from the final decision of the Commissioner of Social Security (Commissioner) denying her application for social security benefits. Russell claims disability due to depression, anxiety, hypertension, dysfunctional uterine bleedings, menorrhagia, anemia, and abdominal pain.

The parties filed cross motions for summary judgment. (Docs. 14, 19). The Court referred the motions to a magistrate judge (MJ) for a report and recommendation (MJRR). The MJ recommends that the Court deny Russell's motion for summary judgment and grant the Commissioner's motion. (Doc. 20). Now before the Court is Russell's Objections to the MJRR. (Doc. 23). For reasons that follow, the Court will adopt the MJRR; the Commissioner's Motion for Summary Judgment (Doc. 19) is

1

**GRANTED**, Russell's Motion for Summary Judgment (Doc. 14) is **DENIED.** This case is **DISMISSED**.

## II. Background

### A. Personal History

Russell filed a claim for disability benefits on August 14, 2006. Her claim was denied. Russell requested a hearing before an administrative law judge (ALJ). On March 2, 2009, the day of the hearing, Russell was thirty-two (32) years old, stood 5'7" tall, and weighed three hundred eighty-six (386) pounds. Russell was married and had three children. Russell attended Wayne State University and was close to completing an undergraduate degree. Russell has no past relevant work history.

Russell received mental health treatment through Wayne State University beginning in 2006. Her initial evaluation, performed by Dr. Jeffery Kuentzel, Ph.D, resulted in diagnoses of major depressive disorder, generalized anxiety disorder, social phobia, and post-traumatic stress disorder. Kuentzel determined Russell's Global Assessment of Functioning (GAF) score was forty-five (45). Additionally, Kuentzel recorded some of Russell's personal history. Russell told Kuentzel she witnessed domestic violence as a child, saw her mother shoot her stepfather, was raped twice, and was robbed at gunpoint and at knifepoint. Russell says she had her first child at the age of sixteen (16).

Russell was diagnosed with dysfunctional uterine bleeding which caused anemia. As a result, Russell underwent a hysterectomy in 2007, which relieved the dysfunctional uterine bleedings, menorrhagia, and anemia. However, after the procedure, Russell says she experienced persistent abdominal pain. A CT scan revealed a small mass in

her abdomen. The treating physician opined that it might be "a reaction around a large suture" from a previous surgery. The doctor explained it would be difficult to treat surgically because Russell's size made the location of her pain difficult to pinpoint.

Russell described being afraid to go out of the house without her husband. Russell says her husband had to accompany her to classes at Wayne State or stand by the door in her view. Russell says she does not like to go out in public and spends most of her time in her room, although Russell attended school and counseling sessions regularly. Russell was in psychotherapy on a continuous basis from 2006 to 2009. Russell's therapists say she was an active participant and made steady progress, specifically with depression. Russell's therapists reevaluated her in 2009 and determined her GAF score improved to fifty (50).

### B. Medical Testimony

Four (4) doctors from the Disability Determination Service (DDS) examined Russell or her medical records. The first, Dr. Kathy Marrow, Ph.D. reviewed Russell's records and diagnosed major depressive disorder, generalized anxiety disorder, social phobia, post-traumatic stress disorder, and paranoid personality disorder. Morrow said that Russell had "moderate" restrictions in activities of daily living and "mild" limitations in social functioning and in concentration, persistence, or pace. Marrow concluded that Russell could sustain an independent routine of simple work activity.

The second DDS examiner, Dr. Kokila Sheth, determined Russell had "mild" limitations in activities of daily living and "moderate" limitations in social functioning and in concentration, persistence, or pace. Sheth determined that Russell's impairments did

not meet or equal a "listing." Sheth concluded that Russell maintained the residual functional capacity to complete simple low stress work.

The third doctor, Dr. Cynthia Shelby-Lane, examined Russell. Shelby-Lane diagnosed depression, hypertension, obesity, and dysfunctional uterine bleeding. Russell complained of knee pain and difficulty standing, stooping, and squatting. Nevertheless, Shelby-Lane noted Russell had no difficulty getting on and off the exam table, walked normally, and could squat and bend to fifty percent (50%) and recover.

At the time of the administrative hearing, Russell was not taking any psychotropic medication. Russell took Wellbutrin (an anti-depressant) in 2003 and 2004 but discontinued use because it exacerbated her uterine bleeding. Russell has not been medicated for mental health problems since.

Dr. Nick Boneff, Ph.D examined Russell for a new disability claim in November of 2010. Russell told Boneff that she saw and heard dead people. Boneff diagnosed post-traumatic stress disorder, panic disorder with agoraphobia, depression, alcohol abuse, and dependent personality disorder.

### C.  Decision of the ALJ

On March 2, 2009, Russell appeared before an ALJ. The ALJ found that Russell suffered from the following severe conditions: depression, generalized anxiety, social phobia, post-traumatic stress disorder, avoidant personality disorder, paranoid personality disorder, uterine bleeding, anemia, and obesity. The ALJ further determined that Russell had not engaged in substantial gainful activity since she filed her disability claim and she had no past relevant work history.

4

The ALJ determined that the impairments listed above significantly limited Russell's ability to do work-related activities. However, the ALJ concluded that the impairments or their combination did not meet or equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Specifically, that Russell did not meet or equal the criteria of listing for 12.04 Affective Disorders, Anxiety Disorders 12.06, or 12.08 Personality Disorders. To meet one of the listings above, Russell's mental impairments must result in at least two of the following: marked restriction of activities of daily living, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence, or pace, or repeated episodes of decompensation, each of extended duration.

Citing the findings of the DDS evaluators, the ALJ determined that Russell's symptoms were not "marked." Both Marrow and Sheth evaluated the severity of Russell's symptoms and characterized them as "mild" or "moderate." At the time, Russell did not take medication for any of her mental health conditions and had no recent history of hospitalization. The ALJ also noted that Russell did not present any testimony from friends or family on the severity of her conditions. Further, the ALJ found the record did not contain a medical opinion that Russell is unable to work.

Finally, the ALJ did not find Russell's descriptions of her limitations credible. The ALJ said that the severity of Russell's complaints was inconsistent with the medical testimony. Specifically, the lack of psychiatric treatment and absence of a supporting medical opinion belied Russell's description of her functional capacity. In support, the ALJ noted that Russell managed to raise three children and was close to completing a college degree.

After the unfavorable decision from the ALJ Russell sought review by the Appeals Council (AC). The AC declined to reconsider the decision of the ALJ. The present suit followed.

### III. Motions for Summary Judgment

Both parties filed motions for summary judgment. Russell argues that the ALJ erred in two respects. The first, that the ALJ incorrectly determined that Russell's mental conditions in combination with her obesity did not meet or equal a listed impairment. Second, the ALJ's assessment of Russell's residual functional capacity was not supported by substantial evidence. Additionally, Russell says that new and material evidence exists that requires the Court to remand the case for further administrative proceedings. The Commissioner argues that Russell had not met her burden to show that she met or equaled a listed impairment and asks the Court to grant summary judgment in its favor.

### IV. MJRR and Objections

The Court referred the motions for summary judgment to the MJ. The MJ determined that the ALJ did not err in finding Russell did not meet or equal a listed impairment because Russell had not advanced evidence to show that conditions were "marked." The MJ next disagreed that the ALJ failed to consider Russell's obesity and its effect on her mental conditions. The MJ found that the ALJ specifically considered Russell's obesity. Moreover, the record lacked medical evidence to support Russell's argument that her obesity in combination with her other conditions equaled a listing.

Next, the MJ found that the ALJ properly considered the opinion and GAF score offered by Russell's treating psychologist when determining her residual functional

6

capacity. Lastly, the MJ found that Russell was not entitled to a "sentence six remand" because the new evidence of abdominal pain was duplicative and Russell had not shown good cause for failing to produce it during the administrative process.

The MJ agreed with the ALJ that Russell had not met her burden. The MJ recommends that the Court grant the Commissioner's motion for summary judgment and deny Russell's motion for summary judgment. Russell filed timely objections to the MJRR. Russell objects to the MJRR on the basis that the MJ did not properly consider her obesity and should have remanded the case in light of new evidence.

### V. Legal Standard

Judicial review of a Social Security disability-benefits application is limited to determining whether the "the commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). A reviewing court may not resolve conflicts in the evidence or decide questions of credibility. *Brainard v. Sec'y of HHS*, 889 F.2d 679, 681 (6th Cir. 1989). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a scintilla but less than a preponderance." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 299 (1938). The substantiality of the evidence must be based upon the record taken as a whole. *Futernick v. Richardson*, 484 F.2d 647, 649 (6th Cir. 1973). The substantial evidence standard "presupposes that there is a zone of choice within which the decision makers can go either way, without interference with the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). The portions of the MJRR that the claimant finds

objectionable are reviewed de novo. 28 U.S.C. § 636(b)(1)(c); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

## VI. Discussion

### A. Substantial Evidence

#### 1. Listed Impairments

First, Russell argues that the ALJ erred by not finding that she met or equaled listings 12.04 (affective disorders) or 12.06 (anxiety-related disorders). The burden of proof for establishing that her conditions meet or equal the requirements of a listed impairment belongs to Russell. *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001). Russell must satisfy all criteria in the listing. *Berry v. Comm'r*, 34 Fed. App'x. 202, 203 (6th Cir. 2002).

To meet the listings of 12.04 or 12.06, Russell must satisfy the criteria of paragraphs A and B. 20 C.F.R. pt. 404, subpt. P, app. 1 §§12.04, 10.06. Paragraph A consists of a clinical finding that medically substantiates a mental disorder. Paragraph B requires Russell to establish at least two of the following: (1) marked restriction of activities of daily living, (2) marked difficulties in social functioning, (3) marked difficulties in maintaining concentration, persistence, and pace; or repeated episodes of decompensation, each of extended duration.

Russell says that she meets the criteria in paragraph B because she has marked restrictions in activities of daily living and social functioning. The MJ correctly observed that the medical testimony on the record indicated Russell's restrictions as to the first and second criteria were "mild" or "moderate," but not "marked." Moreover, there is no

8

indication of episodes of decompensation. There is substantial evidence on the record to support the finding of the ALJ.

## 2. Combined Effects of Conditions

Next, Russell argues if properly considered in combination her conditions should have equaled listings 12.04 (affective disorders) and/or 12.06 (anxiety-related disorders). Russell argues that the MJ considered whether Russell "met" the listed criteria but not whether the combination of her conditions "equaled" a listing. Russell says the ALJ, and in turn the MJ, failed to consider her obesity in combination with her mental health conditions.

The DDS evaluations by Marrow and Sheth, who were aware of Russell's obesity, concluded that Russell's limitations in activities of daily living, social functioning, and concentration, persistence, and pace were either mild or moderate. Even if obesity was not considered it is unclear it arguably changes the evaluation of the medical testimony. There is no medical evidence of physical restrictions due to Russell's weight. With regard to mental health, the record reflects Russell's obesity as both a cause and effect of her depression and anxiety. This did not escape the notice of her treating psychologists, the ALJ, or the MJ.

There is no medical opinion on the record to support Russell's position. Russell simply asserts obesity was a factor without explaining how or why obesity changes the evaluation. The MJ correctly determined that there was not medical evidence to support the position that Russell's obesity in combination with other conditions equals a listing.

### 3. Opinion of Treating Doctor

Next, Russell argues that her treating psychologist's opinions should have been given deference in accordance with the "treating physician rule." *See* 20 C.F.R. § 404.1527(d)(2). Russell says that the ALJ's findings on her residual functional capacity conflicted with the evaluation of her treating physiologist, Dr. Toro. Toro said that Russell's conditions made it extremely challenging to acquire steady work. Toro assigned Russell a GAF score of 50, which indicates serious symptoms.

However, Russell's treating psychologist did not offer an opinion inconsistent with those of the DDS examiners. Toro's assessment does not demand a conclusion that Russell is disabled or that her conditions were "marked" as opposed to "mild" or "moderate." Further, as the MJ correctly pointed out, the ALJ is not required to "put stock in" a GAF score. *Kornecky v. Comm'r of Social Security*, 167 F. App'x 496, 511 (6th 2006). At best, Toro's opinion was equivocal. Toro also said that Russell made steady progress and improved through therapy. Because there is no contradictory opinion, the "treating physician rule" does not apply to Russell. Furthermore, even if the rule applied there is substantial medical evidence on the record to support an opposite conclusion to the position Russell advances.

### B. "Sentence Six" Remand

Lastly, Russell argues that evidence secured after her hearing and appeal to the AC requires a remand for further administrative consideration. Russell presented new medical documentation with her motion for summary judgment. (Doc. 14). The records indicate that Russell sought treatment for abdominal pain. A CT scan revealed a small fibrosis attached to her abdominal wall measuring three (3) by two (2) centimeters.

Russell contends that in light of this new evidence the case deserves a "sentence six" remand. The sixth sentence of 42 U.S.C. § 405(g) provides that a court may remand a case and "order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is [1] new evidence which is [2] material and [3] there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g).

To be new, evidence must not be cumulative, duplicative or repetitive. *Vadeboncoeur v. Callahan*, 976 F. Supp. 751, 54 (N.D. Ill. 1997). The MJ notes that the ALJ considered abdominal pain in his residual functional capacity assessment and his questions to the vocational expert. As such, the evidence is duplicative and thus not new.

If Russell could establish the evidence was new, to be material evidence must be relevant and probative. To be relevant it must relate to the period considered by the ALJ. *Merrill v. Comm'r of Soc. Sec.*, No. H 88-52, 1999 WL 1012868 (D. Or. 1999). To be probative, the evidence must relate to the conditions considered by the ALJ. *Woodford v. Apfel*, 93 F. Supp. 2d 521 (S.D. N.Y. 2000). Further, the new evidence must have the capacity to alter, or potentially alter, the ALJ's decision denying the claim. *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). Russell claims disability based on mental health conditions. Russell fails to explain how the combined effect of abdominal pain and her psychological conditions would change the ALJ's decision.

Finally, as the MJ correctly observed, Russell has not demonstrated good cause for failure to submit the new evidence. "[A] sixth-sentence remand is appropriate only

11

when the district court learns of evidence not in existence or available to the claimant at the time of the administrative proceeding that might have changed that proceeding's outcome." *Sullivan v. Finkelstein*, 496 U.S. 617, 618 (1990). The evidence here was available and in existence. As the MJ correctly explained, the fact that Russell did not have the documents at the time of her hearing is not enough to show good cause. To find otherwise would render the good cause requirement meaningless.

    **SO ORDERED.**


Dated:  March 14, 2012                    s/Avern Cohn
                                                  AVERN COHN
                                                  UNITED STATES DISTRICT JUDGE


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, Wednesday, March 14, 2012, by electronic and/or ordinary mail.

                                                  s/Julie Owens
                                                  Case Manager, (313) 234-5160